IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Ricardo Matthews and Cleo Frank Jackson, et al., | * * * |
| Plaintiffs, | * * |
| vs. | * 2:06 cv 185-MHT-TFM * |
| Town of Autaugaville, et al., | * * |
| Defendants. | * |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM BRIEF IN SUPPORT THEREOF**

COME NOW Defendants, Town of Autaugaville, Chief LeVan Johnson, Mayor Curtis Jackson, Michael McCollum, Donnie Martin, and Wyatt Lee Segers and move the Court for summary judgment as to each of Plaintiffs' claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants support their motion for summary judgment with the following:

1. Pleadings;

2. Argument in support of Defendants' motion for summary judgment;

3. Deposition of Ricardo Mathews, attached hereto as Exhibit 1;

4. Traffic citation issued to Ricardo Mathews, Exhibit 2;

5. Traffic citation issued to Cleo Jackson, Exhibit 3;

6. APOSTC Rule 650-X-2.01, and other rules, Exhibit 4;

7. Deposition of Wyatt Lee Segers, Exhibit 5.

## **NARRATIVE SUMMARY OF UNDISPUTED FACTS**

On April 18, 2004, Plaintiff Ricardo Matthews was driving a vehicle within the city limits of the Town of Autaugaville, Alabama, when he was involved in an accident. (Exhibit 1, p. 36, ll. 21-23, p. 37, ll. 1-3). Matthews did not have automobile liability insurance at the time, nor did he have a valid active driver's license. (Exhibit 1, p. 37, ll. 20-23, p.38, ll. 1-2). The accident investigation was completed by Town of Autaugaville police officer, Lee Segers. (Complaint). Plaintiff Matthews was issued a citation for no proof of insurance and driving without a valid driver's license. (Complaint) (Exhibit 1, pp. 51, ll. 20-23, p.52, ll. 1-2; Exhibit 5, p. 23, ll. 3-22). Matthews pled guilty to the charge of driving without insurance, and the charge of driving with a suspended license was dismissed. (Exhibit 1, p. 55, ll. 5-18).

On June 19, 2004, Plaintiff Cleo Frank Jackson was driving a vehicle in the Town of Autaugaville, and was stopped by Town of Autaugaville police officer Donnie Martin. (Complaint). Plaintiff Jackson was issued a citation for speeding. (Complaint; Exhibit 3). Plaintiff Jackson pled guilty to the charge and paid the traffic fine of $172.50. (Complaint).

On November 11, 2005, Plaintiff Matthews was again issued a traffic citation in the Town of Autaugaville, by Town of Autaugaville Officer Michael McCollum. (Complaint). Plaintiff Matthews was stopped during a routine driver's license check, and was issued a citation for driving with a suspended license. (Complaint; Exhibit 1, pp. 70, ll. 2-23, p.71; line 1). Plaintiff Matthews pled guilty to this charge. (Exhibit 1, p. 71, ll. 2-8).

On February 28, 2006, Plaintiffs Matthews and Jackson filed this lawsuit against Officer

Segers, Officer Martin, Officer McCollum, Officer Brent Wadsworth[1], the Town of Autaugaville, the Town's Chief of Police LeVan Johnson, and its Mayor, Curtis Jackson. (Complaint). Plaintiffs allege violations of due process and equal protection under the United States Constitution, and assert a federal law claim against Defendants Chief Johnson and Mayor Jackson for failure to train and supervise the defendant officers. (Complaint).[2] The focus of Plaintiffs' claim is that the officers issuing tickets were provisionally appointed, not fully certified officers, and that provisionally appointed officers cannot issue tickets unless the officers are under the "direct control and supervision" of a certified officer. The phrase "direct control and supervision" is found in Rule 650-X-2.01 of the APOSTC Rules. It is clear that these rules are not Alabama law. Further, the rules Plaintiffs cite do not define "direct control and supervision." Alabama law is silent as to the task a provisionally appointed police officer can perform.

On March 20, 2006, Defendants filed a motion to dismiss, which was denied. (Doc 4; Doc 19). Now, Defendants file this Motion for Summary Judgment and Memorandum Brief, along with evidentiary submissions in support thereof, as there are no genuine issues of material fact and these Defendants are entitled to judgment as a matter of law as to each of Plaintiffs' claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be entered on a claim if it is shown "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.

---

[1] Although named as a defendant in the style of this case, no facts are asserted in the Complaint regarding Officer Wadsworth, and Officer Wadsworth has not been served with the summons and complaint in this action.

[2] Defendants construe Count III of Plaintiffs' complaint to be a federal cause of action. Plaintiffs do not mention any state law claims in paragraph 9 of the complaint.

R. Civ. P. 56(c). On a motion for summary judgment, although the Court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), "the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party that fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Furthermore, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## ARGUMENT

### I. PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT A DUE PROCESS CLAIM

Plaintiffs are not directly challenging city procedures which permitted officials to violate their due process rights or the lack of established procedures which gave officials the freedom to violate their due process rights; rather, they are alleging that the city officials acted in contravention to established city procedures regarding the activities of police officers prior to certification. (Complaint, paragraph #21). Thus, Plaintiffs' claim is a procedural due process claim requiring Plaintiffs to show the lack of a meaningful post-deprivation remedy. *See Lumpkin v. City of Lafayette*, 24 F. Supp. 2d 1259, 1265 (M.D.Ala. 1998).

It is well-established that a procedural due process violation is not complete "unless and until the State fails to provide due process". *Zinermon v. Burch*, 494 U.S. 113, 123 (1990). In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a

constitutional violation actionable under section 1983 arise. *McKinney v. Pate,* 20 F. 3d 1550, 1557 (11th Cir. 1994).

Rule 650-X-2.01, which plaintiffs rely upon, states that an applicant can be provisionally appointed for a period of six months and can be involved in traffic patrol or the enforcement of traffic or highway laws of the state, including exercising the power of arrest. (Exhibit 4). The rules indicate that the individuals must be under the "direct control and supervision" of a certified officer. "Under the direct control of a supervising officer" is a phrase not defined in the law or in the rules. The rules promulgated by APOST are not the law in Alabama. The Alabama Code section which discusses provisionally appointed officers states that the individual must be certified within six months after employment and that the individual may be provisionally appointed for six months. Ala. Code §36-21-46(a)(3). There is no state law mandating that an individual be under direct control and supervision of a certified officer prior to becoming certified.

Even if Plaintiffs' allegations state a procedural deprivation, such deprivation alone does not support a constitutional violation actionable under § 1983. It is not disputed that these Plaintiffs were either allowed a trial at which they could dispute the alleged "illegal" stop or arrest, or pled guilty to the charges, thus waiving due process. *Tiemens v. United States,* 724 F. 2d 928, 929 (11th Cir. 1984). The Eleventh Circuit has determined that Alabama courts provide adequate due process. *Tinney v. Shores,* 77 F. 3d 378, 382 (11th Cir. 1996). Accordingly, Plaintiffs were provided with a procedural remedy. As such, Plaintiffs' allegations are facially deficient and do not set forth a valid due process claim.

A. <u>Law</u>

The Due Process Clause of the Fourteenth Amendment to the United States Constitution

5

provides: "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §§ 1. When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees. *Hellenic American Neighborhood Action Committee v. City of New York*, 101 F.3d 877 (2nd Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). When a deprivation occurs within established state procedures, the availability of post-deprivation procedures will not satisfy due process. *Hellenic*, 101 F.3d at 880. However, in the latter case, the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post-deprivation remedy. *Id.* As Plaintiffs have alleged wrongdoing by the officers individually, Plaintiffs' Due Process claim falls within this latter category.

B.  <u>Plaintiffs' Due Process claim fails</u>

In the present case, Plaintiffs' due process claim is extinguished by qualified immunity because there is no evidence that the officers violated clearly established due process law. See *infra*. Perhaps an even more compelling reason that summary judgment must be entered in favor of defendants on plaintiffs' Due Process claims is that even if plaintiffs were briefly deprived of their liberty, Plaintiffs cannot show that Alabama does not, and did not, provide a meaningful post-deprivation remedy. The undisputed fact in this case is that plaintiffs either pled guilty to, and paid fines for, the charges against them, or the charges were dismissed. This fact completely precludes Plaintiffs' due process claim. Unlike substantive due process violations, procedural due process

violations do not become complete "unless and until the state refuses to provided due process". *McKinney v. Pate*, 20 F. 3d 1550, 1562 (11th Cir. 1994). All that due process requires is a post-deprivation means of redress for deprivations satisfying the requirements of due process. *Id.* at 1563. Thus, even if plaintiffs suffered a procedural deprivation, they have not suffered a violation of their procedural due process unless the state refused to make available a means to remedy the deprivation. *Id.* Here, the state did just that, and plaintiffs pled guilty. Accordingly, Plaintiffs' due process claim is without merit and due to be dismissed.

## II. PLAINTIFF'S EQUAL PROTECTION CLAIMS FAIL

The Equal Protection Clause of the Fourteenth Amendment forbids any state to "deny to any person within its jurisdiction the equal protection of the law." U.S. Const. Amend. XIV. The Equal Protection Clause requires that similarly situated persons should be treated in a like manner. *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir. 1989).

Count Two of Plaintiffs' Complaint asserts claims of equal protection violations. Specifically, Plaintiffs claim that the Town of Autaugaville Chief of Police and Mayor violated their equal protection rights by allowing uncertified officers patrol the streets of the city. (Complaint). However, Plaintiffs have not asserted that they were treated differently than other "similarly situated" individuals, *by this governmental entity*, as is required for an equal protection claim. *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir. 1989). Rather, Plaintiffs contend this particular municipality, the Town of Autaugaville, allegedly treats its citizens differently than other municipalities. This simply cannot form the basis of an equal protection claim. This very proposition has been addressed by the Eleventh Circuit, and held to be insufficient to establish an equal protection violation:

> If every person residing or being in either portion of the State should be accorded the
>> equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons. It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes **in the same place and under like circumstances**.
>>
>> The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceeding. If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the Fourteenth Amendment, there is no solid reason why there may not be such diversities in different parts of the same State.

*Tarter v. James*, 667 F. 2d 964, 966-67 (11th Cir. 1982)(*emphasis added*).

Thus, Plaintiffs' claim that the Town of Autaugaville treats its citizens differently than other municipalities clearly does not violate Plaintiffs' rights to equal protection under the law, even if proven. In fact, this claim is contradictory to Plaintiffs' Complaint on its face. Plaintiffs are attempting to certify a class "of all people who have been issued a traffic citation or arrested by uncertified police officers employed by the Town of Autaugaville, Alabama". The class definition alone contradicts Plaintiffs' equal protection claim, as it implies that the officers violated the rights of <u>all</u> individuals cited or arrested. Accordingly, Plaintiffs have not set forth a valid equal protection claim and this claim is due to be dismissed.

In order for Plaintiffs to establish that the Defendants discriminated against them, they must establish a *prima facie* case of discrimination, showing that they were "similar situated" to other individuals who were stopped for traffic violations yet were not in fact given citations. *Fuller v.*

*Georgia State Board of Pardons*, 851 F. 2d 1307 (11th Cir. 1988). Plaintiffs cannot meet their burden of proof.

Plaintiffs' equal protection claim fails as a matter of law as Plaintiffs have no evidence to show that they. was "similarly situated" with any others in the Town of Autaugaville who were treated differently, if any exist. Courts have typically required "overwhelming statistical evidence" to give rise to such an inference of discrimination. *Fuller, supra*, 851 F. 2d at 1309. Plaintiffs have not presented any such proof, much less "overwhelming" proof. Accordingly, Plaintiffs' Equal Protection claim against Defendant Johnson fails as a matter of law. Additionally, the defendants are entitled to qualified immunity as to Plaintiffs' Equal Protection claim as well. Accordingly, this claim is due to be dismissed.

### III. PLAINTIFFS' SUPERVISORY FAILURE TO TRAIN CLAIM IS DUE TO BE DISMISSED

Count Three of Plaintiffs' Complaint alleges a failure of the Police Chief and Mayor of the Town of Autaugaville to adequately train and supervise the officers at issue. It is well-settled that plaintiffs seeking to prevail under this theory must first prove a direct causal link between the municipal policy and the constitutional deprivation; they then must establish that the municipality consciously enacted a policy reflecting "deliberate indifference" to the constitutional rights of its citizens. *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978); *City of Canton*, 489 U.S. 378, 389 (1989). Plaintiffs cannot meet this burden. Regardless, Plaintiffs must first establish that a constitutional deprivation occurred. As shown above, Plaintiffs cannot overcome this initial hurdle. Thus, the failure to train and supervise claim must also be dismissed, as such a claim, without first showing an actual violation, cannot stand. *See Rooney v. Watson*, 101 F.3d 1378, 1381-82 (11th Cir.

1996), *cert. denied,* 522 U.S. 966 (1997) ("an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.").

IV.  **PLAINTIFF'S CLAIMS AGAINST THE TOWN OF AUTAUGAVILLE ARE WITHOUT MERIT**

Regarding the Town of Autaugaville, a city cannot be liable pursuant to an agency theory for federal claims. As the federal courts have made clear, before a municipality can have liability for a federal tort, the municipality must have a policy or custom that was the proximate cause of the plaintiff's alleged constitutional deprivation.

In *Monell v. Department of Social Servs.,* 436 U.S. 658, 691-92 (1978), the Court held that a local government may not be held liable under respondeat superior for constitutional torts committed by a municipal employee. Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. *Monell,* 436 U.S. at 694. *Monell* also set a high threshold for causation, requiring that the plaintiff establish that the municipal policy be the "moving force" behind the constitutional violation. *Id.* Here, Plaintiffs cannot show a constitutional injury, as set forth above. Accordingly, the claims against the Town of Autaugaville and its mayor and police chief are due to be dismissed.

V.  **THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

The qualified immunity analysis proceeds in two steps. The defendant must first prove that he was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred. *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002). Whether the defendants acted within the scope of their discretionary authority turns on whether the acts in question are of a type

that fell within the employee's job responsibilities, rather than whether they involved the exercise of actual discretion. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). The inquiry is two-fold; the court asks whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. See *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n. 17 (11th Cir. 1994). If the defendant meets this burden, the burden shifts to the plaintiff to establish that the defendant's conduct violated clearly established law. *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 441 F.3d 1287, 1302 (11th Cir. 2006); see also *Akins v. Fulton County, Georgia*, 420 F.3d 1293, 1300 (11th Cir. 2005); *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

The second prong of the qualified immunity analysis also poses two questions: (1) what was the clearly established law at the time of the public official's actions, and (2) did the public official's conduct violate the clearly established law. *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th cir. 1988). The court determines whether the applicable law was clearly established at the time of the challenged action by reference to decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the supreme court of relevant state. *D'Aguanno v. Gallagher*, 50 F.3d 877, 881 n.6 (11th Cir. 1995); *Courson v. McMillian*, 939 F.3d 1479, 1498 & n. 32 (11th Cir. 1991). This inquiry is "fact specific." *Rodgers v. Horsley*, 39 F.3d 308, 311 (11th Cir. 1994). The plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. The contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. In other words, "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the

11

defendant." *Rodgers*, 39 F.3d at 311; *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994). The plaintiff cannot rely on "general conclusory allegations" or "broad legal truisms." *Post*, 7 F.3d at 1557; *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir.), cert. denied, 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed2d 65 (1989); *Muhammad v. Wainwright*, 839 F.2d 1422, 1424 (11th cir. 1987).

The first step in the qualified immunity analysis reveals that the individual defendants were acting within their scope of discretionary authority at the time the allegedly wrongful act occurred. At the time the traffic tickets were written, the officers were performing a legitimate job-related function. Also, the individuals were performing a legitimate job-related function through the means that were within their power to utilize. As noted above, Alabama Code §36-21-46 states that an applicant for a police officers position may be provisionally appointed for a period of six (6) months. Contrary to Plaintiffs' argument, there is no Alabama law that requires "direct control and supervision" of a certified law enforcement officer. Moreover, even if the Court considers the rules that Plaintiff puts forth to be "laws" of the State of Alabama, Plaintiffs' rules do not define the phrase "direct control and supervision." The supervisors at the City of Autaugaville interpreted the phrase "direct control and supervision" to mean that a certified officer needed to be available by radio. This interpretation is consistent with Alabama law and is consistent with the rules put forth by Plaintiffs. Plaintiffs' interpretation of the phrase "direct control and supervision of a certified law enforcement officer" is that a certified officer must be physically present with the provisionally appointed officer. Plaintiffs' interpretation is not supported by Alabama law. Therefore, the Defendants have met the first step in the qualified immunity analysis. Now, the burden shifts to the Plaintiff to establish that Defendants' conduct violated clearly established law.

Plaintiff cannot show that the individual defendants violated clearly established law. Contours of the law must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. In summary, if the law has not staked out a bright line rule, qualified immunity almost always protects the defendant. In this case, it cannot be argued that the law is clear. Alabama Code §36-21-46(a)(3) states that an applicant my be provisionally appointed for a period of six (6) months. This code section places no limitations on the task a provisionally appointed officer can perform. The rules set forth by Plaintiffs state that a provisionally appointed officer can be involved in enforcement of traffic or highway laws of the state, including exercising the powers of arrest when "under the direct control and supervision of a certified enforcement officer." The rules do not define "direct control and supervision of a certified law enforcement officer." It is Defendants contention that "direct control and supervision" can come through physical presence or being able to contact the supervisor on a radio. Obviously, the definition of "direct control and supervision" is not required by Alabama law and is not defined by APOSTC Rules.[3] Accordingly, the individual Defendants are entitled to qualified immunity.

---

[3] Defendants further contend that APOSTC does not have the power or duty to regulate a provisionally appointed individual. Alabama Code §36-21-45 does not give APOSTC the power or the duty to regulate the activity of a provisionally appointed individual. Subsection 2 of this code provision states the Commission shall have the power to "review from time to time the standard described in § 36-21-46 for applicants and appointees as law enforcement officers." This section only allows APOSTC to review the standards. It does not allow APOSTC to dictate the type of procedures or tasks of a provisionally appointed officer. The attempt to regulate a provisionally appointed officer by APOSTC goes beyond its powers and duties and modifies Alabama law.

## CONCLUSION

Based on the foregoing, Defendants are entitled to summary judgment as to each of Plaintiffs' claims, as there are no genuine issues of material fact and these Defendants are entitled to judgment as a matter of law. Plaintiffs cannot present substantial evidence to support their claims of Equal Protection and Due Process violations, or their claims alleging a policy or custom of the Town of Autaugaville that was the moving force behind the alleged constitutional violations.

Respectfully submitted,

/sRick A. Howard
ALEX L. HOLTSFORD, JR. (HOL048)
RICK A. HOWARD (HOW045)
APRIL W. MCKAY (WIL304)
Attorneys for Defendants

OF COUNSEL:
Nix Holtsford Gilliland
      Higgins & Hitson, P.C.
P.O. Box 4128
Montgomery, AL 36103-4128
(334) 215-8585

## CERTIFICATE OF SERVICE

I hereby certify that I have this day sent by mail, postage prepaid, an exact copy of the foregoing document to:

Jim L. Debardelaben
1505 Madison Avenue
Post Office Box 152
Montgomery, AL 36101-0152

This the 19th day of February, 2008.

/s Rick A. Howard
OF COUNSEL