IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| RICARDO MATTHEWS and<br>CLEO FRANK JACKSON, et al.,<br>    Plaintiffs, | )<br>)<br>)<br>) |
| vs. | ) CASE NO:2:06 cv 185-DRB<br>)<br>)<br>)<br>) |
| TOWN OF AUTAUGAVILLE, et al., | )<br>)<br>) |
|     Defendants. | ) |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Narrative Summary of Undisputed Facts**

The narrative summary of undisputed facts in Defendants' brief are largely irrelevant. Except for the fact that the Plaintiffs were arrested by individuals being held out as police officers of the Town of Autaugaville, the facts were totally irrelevant.

The Rule of the Alabama Peace Officers Standards and Training Commission which this case revolves around is Rule 650-x-2-.01, Training. The rule provides:

> "The applicant must be gainfully employed as a law enforcement officer by a law enforcement agency at the time of his/her application to the academy. Prior to certification, the applicant shall complete the required course of training established by the Commission. An applicant may be provisionally appointed for a period of six months. No individual may be employed for an additional period until that

1

individual is certified by the Commission.

1. Each applicant must be gainfully employed as a full time law enforcement officer by a law enforcement agency at the time of his/her application to the academy.

>   a. Full time is understood to mean 40 hours per week or to average out to 40 hours per week during the monthly or bi-weekly pay periods of most agencies.

>   b. A law enforcement agency hiring an applicant working less than 40 hours per week must request a written waiver from the Commission for the applicant to attend an academy.

2. Prior to certification, the applicant shall complete the required course of training established by the Commission.

3. An applicant may be provisionally appointed for a period of six months
>   a. Provisional appointment requires:

>   1. An application package as set out in Rule 650-X-2-.09 has been submitted on the first day of employment as stipulated in Rule 650-X-1-.16(4) and has been received by the Commission.

>   2. An applicant involved in patrol operation for the purpose of detection, prevention and suppression of crime or the enforcement of the traffic or highway laws of the state, including exercising the power of arrest, will be under the direct control and supervision of a certified law enforcement officer.

>   3. Traffic direction and control may be performed without direct supervision, provided, however, that supervisory control is exercised by a certified law enforcement officer whose total span of control would be considered within reasonable limits.

>   4. Applicants may render crowd control assistance at public gatherings or governmental functions as directed by their employing law enforcement agency

provided supervisory control will be exercised by a certified law enforcement officer whose span of control would be considered within reasonable limits.

5. The provisional appointment is valid for a total of six (6) months (180 days) during a two(2) year period of (730 days) from the time of first appointment by any law enforcement agency.

6. This six month period to complete his/her required course of training cannot be extended or re-started by an applicant being terminated or re-hired by the same or another law enforcement agency nor by an applicant voluntarily changing employment from one law enforcement agency to another. Each day of the six-month provisional appointment is cumulative no matter how many law enforcement agencies the applicant has worked for during his/her six-month provisional appointment.

7. The provisional appointment of any applicant who does not complete the required course of law enforcement training within six months from the date of his/her initial hiring is null and void.

8. An applicant package may again be submitted by a law enforcement agency on an applicant two years after they have left a law enforcement agency where they did not attain certification as required herein.

9. Provisional appointment does not apply to unpaid, volunteers, auxiliaries, or reserves who do not have the power to arrest."

What this case concerns is the Town of Autaugaville allowing individuals not certified as police officers by Alabama Peace Officers Standards and Training Commission (APOSTC) to conduct law enforcement activities, without being "under the direct control and supervision of a certified law enforcement officer." (Rule 650-X-2-.01(3)(a)(2)).

Defendant Curtis Jackson was the Mayor of the Town of Autaugaville at the time

pertinent to this issue. Defendant Jackson was Mayor of Autaugaville for thirty-nine (39) years. In his capacity as Mayor he was "overseeing the overall operation of the town." (Jackson depo. p.9, ll 5-16). Defendant Jackson supervised the Police Department. (Jackson depo. p.10, ll. 9-14)

When applicants apply for a police position, the committee that interviews the applicants consists of the Mayor along with the members of the City Council . (Jackson depo. p. 10, ll.20-23; p.11, ll.1-21). Defendant Jackson testified that the committee he was a member of checked to see if the person hired as a police officer was certified by APOSTC. If the person was not certified the person was hired and worked "while they are under the guidance of a certified officer." (Jackson depo. p.11, ll. 22-23; p.12, ll. 1-11).

Defendant Jackson interprets direct supervision and control as follows:

> "A. Well, as I mentioned earlier, he's in direct control twenty-four hours a day if he is on duty twenty-four hours a day. Not necessarily the calling, but he's still able to be in contact with them all the time."
> (Jackson depo., p.14, ll.13-19).

Defendant Jackson admitted that the Town of Autaugaville placed police officers that were not certified in a patrol car by themselves. (Jackson depo., p.14, ll.20-23; p. 15, ll.1-2). When asked about the training the Mayor and City Council required before one of the applicants could be hired, Defendant Jackson responded:

> "Q. Okay. Tell me what training that you as the mayor and the committee requires one of these applicants to have before he will be hired.
>
> A. Well, he's required to ride with the chief for a while under his direct supervision there with him and shows him the layout of the town, and then at intervals, he rides with him at different times.
>
> Q. Okay. So he's required to ride with the chief for a while and be

4

> under the chief's direct supervision?
>
> A. Yes.
>
> Q. And then at intervals, he's under the chief's direct supervision that rides with him on occasion?
>
> A. Yes.
>
> Q. Who has direct supervision of him when he's not riding with the chief?
>
> A. The chief.
>
> Q. How does he have direct supervision when he's not riding with him?
>
> MR. HOWARD: Object to the form.
>
> Asked and answered.
>
> Q. If you know.
>
> A. I think he uses his cell phone and radios in the car to be in contact with him at all times."

Defendant Jackson stated he depended on Chief LeVan Johnson to make sure that the applicants have the certificate and qualifications to go out on the street. He never checked behind Defendant Johnson. (Jackson depo. p.18, ll.1-19).

Defendant Jackson testified at his deposition that "direct supervision is being in contact with him and knows where he's at and what he's doing." (Jackson depo. p.19, ll.12-15). However, the Police Chief is on eight hours in the day time, but does not live in Autaugaville but instead resides in Prattville, Alabama which is over six miles away. (Jackson depo. p.27, ll.12-16; p. 30, ll. 7-21).

Defendant LeVan Johnson began his employment and position as the Police Chief of the

Town of Autaugaville in January 2004. (Johnson depo. p. 8, ll.3-6). Defendant Johnson stated in his deposition that he first read over Rule 650-x-2-.01 of APOSTC when he read it in the paper about the lawsuit being filed. After the lawsuit was filed, Defendant Johnson started to conduct some research. (Johnson depo. p. 20, ll.6-19).

Defendant Johnson stated that in February 2006 he discussed Rule 650-x-2-.01 APOSTC with Allen Bennefield at the chief conference. Chief Bennefield, the Executive Secretary of APOSTC, informed Defendant Johnson that a supervisor could not be in his office and supervise an uncertified police officer that is out patrolling the streets. (Johnson depo. p. 21, ll.14-23; p.22, ll.1-23; p.23, ll.1-23; p. 24, ll.1-2). No one with APOSTC has ever informed Defendant Johnson that in order for an uncertified officer to be on patrol they would have to be in the vehicle with a certified officer. (Johnson depo. p. 25, ll. 7-13).

Defendant Donnie Martin went to work for the Town of Autaugaville sometime in April 2004. (Martin depo. p. 8, ll.1-22). Defendant Martin graduated from the Tuscaloosa Police Academy and was certified on November 4, 2004. He worked from April 2004 until November 2004 as a police officer for the Town of Autaugaville without being certified. (Martin depo. p. 9, ll.9-22; p. 10, ll.1-2).

Defendant Martin testified that prior to his certification by APOSTC he was involved in the suppression of crime and enforcement of traffic laws, and also had the power to arrest. (Martin depo. p. 12, ll. 1-7). Defendant Martin operated under the direct supervision and control of Defendant Johnson. (Martin depo. p. 12, ll. 11-16). Defendant Martin did not know where Defendant Johnson was located when Defendant Johnson was giving Defendant Martin direct supervision. (Martin depo. p.13, ll.8-10).

Defendant Wyatt Segers, III testified he worked as a police officer for the Town of Autaugaville from March 2004 until September 2004. (Segers depo. p. 7, ll. 10-16). Defendant Segers entered the Montgomery Police Academy the first week of March 2004, but resigned his first week. (Segers depo. p. 12, ll. 9-16), At the end of April 2004, he entered the Tuscaloosa Police Academy and graduated on July 15, 2004. (Segers depo. p. 16, ll. 1-11). Between resigning from the Montgomery Police Academy and entering the Tuscaloosa Police Academy, Defendant Segers went back to work for the Town of Autaugaville. (Segers depo. p. 16, ll.12-19). Defendant Segers was patrolling in the vehicle by himself. (Segers depo. p. 17, ll.8-12).

On the weekends Defendant Segers worked by himself and there was no one else at the police department. If he needed help he had to radio to call for help to county deputies or he could call Defendant Johnson. (Segers depo. p. 21, ll. 2-17; p. 22, ll.1-9). On one occasion there was an accident and Defendant Segers had to call Deputy Sheriff McNabb, because Johnson was off that day and not available to supervisor Segers. (Segers depo. p. 21, ll.18-23, p. 22, ll.1-9).

Defendant Segers viewed tickets issued to Plaintiff Ricardo Matthews and stated it was April 18, 2004, when the tickets were issued. (Segers depo. p. 23, ll.17-22). This was before Defendant Segers was certified by APOSTC.

### Summary Judgment Standard

A Summary Judgment must not be entered on a claim if there is any showing that there is a genuine issue as to a material fact. On a Motion for Summary Judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the non moving party. (Federal Rule of Civil Procedure 56).

## Argument

This case is about the Town of Autaugaville, Defendant Curtis Jackson (Mayor) and Defendant LeVan Johnson's (Police Chief) callus disregard for the Alabama Peace Officers Standards and Training Commission's policy and procedures and rules and regulations. APOSTC "is the state agency responsible for supervising police training and employment under the Standards and Training Act." See §36-21-5, Code of Alabama 1975, as amended; Ziegler v Jackson, 638 F. 2d 776 (5th Cir. 1981).

It is clearly evident that the Town of Autaugaville hiring of uncertified police officers to patrol and enforce the law is a violation of APOSTC rules and regulations. Apparently since the hiring of Defendant LeVan Johnson in January 2004, it was common practice for uncertified individuals to be hired by the Town of Autaugaville as police officers and allowed to patrol and enforce the laws. Before individuals are hired, both the Mayor and the City Council, acting as a committee interviewed the applicants and approved the hiring. Thus, it is evident that the Town of Autaugaville has established a pattern, practice, policy and procedure of violating the state training and requirement rules for individuals hired as police officers.

The Defendants argue that because the Plaintiffs plead guilty to the violations that the uncertified officer charged them with, the Plaintiffs have no legal recourse. However, in Haring v Procise, 462 U.S. 306, 103 S.Ct. 2368, 76 L. Ed.2d 595 (1983), the Supreme Court specifically held that "a defendant convicted on a guilty plea in state court is not precluded from seeking damages under 42 U.S.C. §1983..."

In this case the Plaintiffs were stopped and ticketed by individuals who gave the

appearance of law enforcement officials for the Town of Autaugaville. The person was in a police uniform, drove an Autaugaville Police vehicle and issued a ticket for the Autaugaville Municipal Court. There was no evidence readily available that the person making the "arrest" and issuing the ticket was not a law enforcement official. Citizens should be able to depend on the local governing body the follow the rules and regulations of the state.

The Plaintiffs were not provided the same protection of state rules and regulations as other citizens of Alabama. It is the essence of equal protection requirement is that the state treat all those similarly situated similarly. Wilson P. Abraham Construction Corp. v Texas Industries, Inc., 604 F. 2d 897, 904 (5th Cir. 1979).

The Defendants argue that Plaintiffs have in essence waived their right to pursue a claim because the Plaintiffs failed to address the matter in criminal court. There is no procedure in criminal court to address the qualifications of the person issuing a citation or the local governing body not following the proper procedure when allowing uncertified police officers to enforce laws without proper supervision. Even if there is, the question is whether one is guilty or innocent of the violation charged. Just because the officer was not certified does not mean the Plaintiffs did not commit the offenses charged against them.

The substantive component of the Due Process Clause protects those rights that are "fundamental", that is, rights that are "implicit in the concept of ordered liberty." Palko v Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L. Ed. 288 (1937). A finding that a right merits substantive due process protection means that the right is protected "against certain government actions regardless of the fairness of the procedures used to implement them." Collins v City of Harker Heights, 503, U.S. 115, 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261 (1992).

The Due Process Clause of the Fourteenth Amendment provides "nor shall any deprive any person of life, liberty or property, without due process of law." In this case the stopping of the Plaintiffs by uncertified officers denied the Plaintiffs liberty. The subsequent fines because of the unlawful and illegal acts of the uncertified officers denied the Plaintiffs of property.

There is no cause for the Plaintiffs being stopped and ticketed by uncertified police officers. There is no justification for placing uncertified police officers on the public highways with full powers of certified police officers. The uncertified police officers had no more authority than normal citizen. However, the Defendants represented to the citizens that the uncertified police officers had full training and power of certified officers. That is fraud.

Did the hiring of uncertified individuals to enforce laws by the Town of Autaugaville amount to an official policy? The answer has to be yes. Defendant Jackson, the Mayor, admitted he and the City Council acted as a committee to interview each applicant before the applicant was hired. The mayor and the city council checked into the applicants background, spoke to the applicant about his experience and had a list they followed through so all applicants were treated the same way. (Jackson depo. p. 11, ll. 10-21). Jackson and the rest of the city council had to be aware that the individuals hired as police officers were not certified by APOSTC since that was an area checked. The committee even checked to see if people applying for police officer openings were certified by APOSTC. (Jackson depo. p.11, ll.22-23; p.12, ll.1-4). Defendant Jackson was in agreement for telephone and radio supervision. (Jackson depo. p. 14, ll.15-19).

Monell v Department of Social Services holds that a municipality can be sued for damages under 42 U.S.C. §1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted

10

and promulgated by that body's officers" or is visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision making channels." Monell v Department of Social Services ,436 U.S. at 690-91, 98 S.Ct. @2035-36.

Monell imposes liability on municipalities for depravation of constitutional rights pursuant to municipal policy, whether the policy is officially promulgated or authorized by custom. Liability of the municipality is established in this case since the official policy or custom of the Town of Autaugaville, i.e. hiring uncertified police officers to patrol and enforce the law, was the moving force behind the Plaintiffs' constitutional violation. Polk County v Dodson, 454 U.S. 312, 102 S.Ct. 445, 454, 70 L. Ed.2d 509 (1981).

In this case, it is conclusively shown that the Town of Autaugaville had an official policy to hire uncertified and untrained individuals to be employed as law enforcement officers. Thus, since the Plaintiffs' constitutional depravation resulted from the execution of an official policy or custom of the Town of Autaugaville is liable for money damages pursuant to Monell, supra.

The Defendants argue they are entitled to qualified immunity. Insofar as hiring uncertified individuals to be police officers, the Plaintiffs agree such was within the authority of the Defendants. What was beyond the authority of the Defendants was to allow the uncertified individuals to perform all duties of a police officer without being under the close direct supervision of an officer. It was a clear violation of Rule 650-x-2.01(3)(a)(2) to allow an applicant to patrol for the prevention and suppression of crime without being under the direct control and supervision of a certified law enforcement officer. The attitude taken by Defendant Johnson showed a deliberate indifference to proper training before allowing uncertified

individuals to patrol without direct control and supervision.

The first time Defendant Johnson asked anyone from APOSTC a question concerning uncertified police officers patrolling alone was when he approached Allen Bennefield, executive Secretary of APOSTC in February 2006, after this lawsuit was filed. (Johnson depo. p. 22, ll. 3-22). Mr. Bennefield informed Defendant Johnson that a person could not be supervised from the office. (Johnson demo. p. 23, ll. 4-15). Defendant Johnson also spoke to a female representative of APOSTC during the February-March 2006 time frame. This person informed Defendant Johnson that a certified person would have to be in the vehicle with the uncertified person. (Johnson demo. p. 24, ll.9-23; p.25, ll.1-2). No one with APOSTC has ever informed Defendant Johnson of anything other than an uncertified officer to be allowed to be on patrol would have to be in the vehicle with a certified officer. (Johnson depo.p 25, ll. 7-13). Defendant Johnson was also aware that APOSTC is the agency with the State of Alabama who sets certification standards for law enforcement officers of the State of Alabama. (Johnson demo. p. 25, ll.14-18).

The action of the Defendants in hiring and allowing uncertified individuals to patrol as police officers shows a deliberate indifference to the safety and constitutional right of the public. The four uncertified officers, Defendants McCollum, Martin, Segers along with officer Wadsworth who were allowed to patrol alone without proper supervision reflects a failure to train the officers adequately and reflects a "deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). The pattern of hiring four individuals and allowing these individuals to perform alone as police officers certainly shows a pattern of constitutional violation. In City of Canton, supra, the Supreme Court said "in light of the duties assigned to

specific officers or employees [where] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, then policy makers of the city can reasonably be said to have been deliberately in different to need." See also Bruce v Beary, 498 F. 3d 1232 (11th Cir. 2007). In this case it certainly shows deliberate indifference as it is well known that all police academy are twelve (12) weeks long, and to be a certified law enforcement officer a person has to pass a police academy. To let an uncertified person patrol puts the citizen rights and life at a substantial risk.

## Conclusion

The Defendants' Motion For Summary Judgment is due to be denied. The Defendants choose to ignore the state requirements for law enforcement officers and placed individuals with little or no training in the roles of law enforcement officers. By doing so, not once, but four times the Defendants place the liberty rights and life of the citizens in Autaugaville Alabama and any person passing through Autaugaville at risk. Average citizens were stopped, detained, forced to give up their liberty and fined because individuals not qualified to perform the functions of police officers were acting as police officers.

The State of Alabama has a formal and demanding procedure for an individual to pass if that individual wants to be a law enforcement officer. The reason for this is to protect the public's rights. The Defendants choose to ignore the requirements and to established their own substandard requirements,. Such should not be allowed, or what will happen to the Rule of Law?

Respectfully submitted this the 5th day of March, 2008.

_____
JIM L. DEBARDELABEN (DEB003)
Attorney for Plaintiffs

**OF COUNSEL:**
Jim L. DeBardelaben
Attorney At Law
P.O. Box 152
Montgomery, Alabama 36101-0152
(334) 265-9206

### CERTIFICATE OF SERVICE

I hereby certify that I have this day sent by mail, postage prepaid, an exact copy of the foregoing document to:

Rick A. Howard, Esq.
Alex Holtsford, Jr., Esq.
April M. Wills, Esq.
Nix, Holtsford, Gilliland, Higgins & Hitson, P.C.
P.O. Box 4128
Montgomery, Alabama 36103-4128

_____
Of Counsel